**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**CHRISTINE SNIDER, as Personal
Representative of the Estate of Bessie
Harkey, deceased,**

                    **Plaintiff,**

**-vs-**                                              **Case No. 6:05-cv-1151-Orl-22JGG**

**CONWAY LAKES NC, LLC, d/b/a Conway
Lakes Nursing Center, and SBK CAPITAL,
LLC,**

                    **Defendants.**

_____

## REPORT AND RECOMMENDATION

**TO THE UNITED STATES DISTRICT COURT**

    This cause came on for evidentiary hearing on December 16, 2005 on the following motion:

| | |
|---|---|
| **MOTION:** | **DEFENDANTS' AMENDED MOTION TO COMPEL ARBITRATION, TO DISMISS LAWSUIT AND TO STRIKE DISCOVERY (Doc. No. 23)** |
| **FILED:** | **September 30, 2005** |

**THEREON** it is **RECOMMENDED** that the motion be **GRANTED** in part and **DENIED** in part.

    Defendants, Conway Lakes, NC, LLC ("Conway Lakes") and SBK Capital, LLC, ("SBK") move to compel arbitration, dismiss the pending action, and strike discovery, pursuant to an agreement for arbitration signed by Plaintiff Christine Snider when admitting her mother, Bessie Harkey to a

nursing home. For the following reasons, the undersigned recommends that the motion to compel arbitration be granted, and that the action pending in this Court be stayed until the arbitration proceedings are completed.

## I. THE LAW

### A. Federal Arbitration Act

An arbitration clause in "a contract evidencing a transaction involving commerce" is subject to the Federal Arbitration Act ("FAA"). *See Perry v. Thomas*, 482 U.S. 483 (1987); *Southland Corp. v. Keating*, 465 U.S. 1 (1984). Section 2 provides that arbitration agreements that are governed by the FAA are "valid, irrevocable, and enforceable." 9 U.S.C. § 2. The United States Supreme Court has given the phrase "evidencing a transaction involving commerce" a broad reading, stating that the language should be interpreted as expansively as the Commerce Clause. *See, e.g., Perry*, 482 U.S. at 290 (holding that the FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause").

### B. Issues for the Court to Decide

Federal courts confronted with motions to compel arbitration are only authorized to address "issues related to the making and performance of the agreement to arbitrate" itself, not general challenges to the contract containing an arbitration clause as a whole. *See Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967). Because arbitration clauses are separable from the contracts with which they are included, the arbitrator should resolve a claim that the contract in its entirety is void, while the court should decide a claim that the arbitration clause itself was fraudulently induced or otherwise unenforceable. *Id*. at 402-04. Any claim of fraud, duress, or unconscionability in the formation of an arbitration agreement is, therefore, a matter for judicial

consideration, not for the arbitrator. *Miller v. Drexel Burnham Lambert, Inc.*, 791 F.2d 850, 854 (11th Cir. 1986).

Courts should consider three issues in ruling on a motion to compel arbitration of a given dispute: 1.) whether a valid written agreement to arbitrate exists; 2.) whether an arbitrable issue exists; and 3.) whether the right to arbitration was waived. *Home Quality Mgmnt., Inc. v. Ace Am. Ins. Co.*, 381 F.Supp.2d 1363, 1365 (S.D. Fla. 2005); *see generally, Seaboard Coast Line R.R. v. Trailer Train Co.*, 690 F.2d 1343 (11th Cir. 1982).

1. *Whether a Valid Written Agreement to Arbitrate Exists*

A court may not order arbitration unless it is satisfied that a valid written arbitration agreement exists. *Drexel Burnham Lambert*, 791 F.2d at 854 (11th Cir. 1986). According to section 2 of the FAA, written arbitration agreements are "enforceable, save on such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Even if both parties signed a written agreement to arbitrate, the agreement can still be defeated by any defense existing under applicable state contract law. *See, e.g., Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996)(stating that "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the FAA]").

2. *Whether an Arbitrable Issue Exists*

The second issue for the court to decide is whether a particular claim is subject to arbitration. The determination of whether the arbitration clause requires arbitration of a particular dispute also necessarily "rests of the intent of the parties." *Seaboard Coast Line*, 690 F.2d at 1348. The FAA, thus, does not prevent parties who agree to arbitrate from excluding certain claims from the scope of their arbitration agreement. *American Express Fin. Advisors, Inc. V. Makarewicz*, 122 F.3d 935, 940

(11th Cir. 1997). Because the FAA creates a presumption in favor of arbitrability, the parties must clearly express their intent to exclude categories of claims from their arbitration agreement; any doubts about the scope of an arbitration clause should be resolve in favor of arbitration. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 945 (1995).

       3.    *Waiver*

Finally, the Court must decide whether the party seeking arbitration has waived the right to arbitration. A party may be deemed to have waived its right to arbitrate a dispute "when a party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party." *Stone v. E.F. Hutton & Co., Inc.* 898 F.2d 1542, 1543 (11th Cir. 1990). All doubts concerning whether a waiver of the right to arbitrate has occurred should be resolved in favor of arbitration. *Id.* The party arguing waiver of arbitration bears a "heavy burden of proof." *Belke v. Merrill Lynch, Pierce, Fenner & Smith*, 693 F.2d 1023, 1025 (11th Cir. 1982).

**C.**    **Unconscionability**

As stated earlier, a written arbitration clause can still be defeated by any defense existing under applicable state contract law. Florida courts may decline to enforce a contract on the grounds that it is unconscionable. *Golden v. Mobil Oil Corp.*, 882 F.2d 490, 493 (11th Cir. 1989). In order to invalidate an arbitration clause, the court must find that it is both procedurally and substantively unconscionable. *Powertel v. Bexley*, 743 So.2d 570, 574 (Fla. 1st DCA 1999); *Blanchard ex. rel. Blanchard v. Cent. Park Lodges (Tarpon Springs), Inc.*, 805 So.2d 6, 9 (Fla. 2d DCA 2001); *Steinhardt v. Rudolph*, 422 So.2d 884, 890 (Fla. 3d DCA 1982); *Palm Beach Motor Cars Ltd, Inc. v. Jeffries*, 885 So.2d 990, 992 (Fla. 4th DCA 2004).

Procedural unconscionability relates to the manner in which the contract was entered. Procedural unconscionability exists when the individualized circumstances surrounding the transaction reveal that there was no "real and voluntary meeting of the minds" of the contracting parties. *Kohl v. Bay Colony Club Condo., Inc.*, 398 So.2d 865, 868 (Fla. 4th DCA 1981). The court should consider issues including the relative bargaining power of the parties and their ability to know and understand the disputed contract terms. *Powertel,* 743 So.2d at 574. The court, for example, might find that a contract is procedurally unconscionable if important terms were "hidden in a maze of fine print and minimized by deceptive sales practices." *Id*., quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965).

In analyzing whether an arbitration clause is procedurally unconscionable, although not dispositive of the issue, courts look to whether the clause is an adhesion contract. An adhesion contract is defined as a

> standardized contract form offered to consumers of goods and services on essentially [a] **'take it or leave it' basis** without affording [the] consumer [a] realistic opportunity to bargain and under such conditions that [the] consumer cannot obtain [the] desired product or services except by acquiescing in the form contract.

*Powertel*, 743 So.2d at 574(emphasis added).

Substantive unconscionability focuses on the agreement itself. *Kohl*, 398 So.2d at 868. The party seeking to avoid arbitration must show that the terms of the contract itself are "unreasonable and unfair." *Palm Beach Motor*, 885 So.2d at 992. One indicator of substantive unconscionability is that the agreement requires the customers to give up other legal remedies. *Powertel*, 743 So.2d at 576. For instance, an arbitration clause that limited liability to actual damages or precluded class litigation would likely be considered substantively unconscionable. *Id*. Another indicator is when

the agreement binds one party to arbitration of its claims but not the other party. *Palm Beach Motor*, 885 So.2d at 992.

### D. Staying the Action

Section 3 requires a federal court in which a suit has been brought "upon any issue referable to arbitration under an agreement in writing for such arbitration" to stay the court action pending arbitration once it is satisfied that the issue is arbitrable under the agreement." 9 U.S.C. § 3. The action should be stayed "until such arbitration has been had in accordance with the terms of the agreement." *Id*.

## II. APPLICATION

### A. Background

On July 15, 2003, Bessie Harkey, a ninety-six year-old woman, was admitted as a patient and resident to Defendants' nursing home, Conway Lakes Nursing Center (the "Facility"). The same day, Plaintiff Christine Snider signed the Arbitration Agreement at issue before the Court and another agreement containing the terms under which Harkey was admitted to the Facility as a resident ("Admission Agreement"). Docket Nos. 30-3 at 11 and 23-3 at 4.[1] Kathy Cox, the Facility's Director of Admissions, also signed both agreements on behalf of the Facility. *Id.*

Harkey lived at the Center until when she was admitted to Orlando Regional Medical Center hospital on April 3, 2004. Docket No. 2 at 2, ¶ 17. On May 20, 2004, Harkey died as a result of dehydration and pneumonia. *Id*. at 2, ¶ 18. Snider, as personal representative for Harkey's estate,

---

[1] The Complaint alleges that Harkey entered the Facility in June 2003, not July 15, 2003. Docket No. 2 at 2, ¶ 6. During testimony, Snider testified that she "thinks" that Harkey entered and was admitted to the Facility the same day Snider signed the Admission Agreement and Arbitration Agreement, and that the date was either July 14 or July 15, 2003. The Arbitration Agreement is not dated, but the Admission Agreement shows the date of July 15, 2003. *See* Docket Nos. 23-3 at 4 and 30-3 at 11.

originally filed the action in state court, seeking to hold Defendants Conway Lakes and SBK liable for either personal injury or wrongful death of Harkey under the Florida nursing home statutes as outlined in Fla. Stat. §400.022.  *See* Docket Nos. 1, 2.  In the complaint, Snider claims that Harkey suffered injuries and ultimately died because of the Facility's failure to provide adequate care and protection during Harkey's stay at the Facility.  Docket No. 2 at ¶¶ 26-29.

Defendants Conway Lakes and SBK filed a Notice of Removal on August 4, 2005 due to the parties' complete diversity of citizenship.  Docket No. 1 at 2.  Conway Lakes and SBK are both Georgia limited liability companies with their principal places of business in Atlanta, Georgia.  Id. at ¶ 4-5.  Harkey was a citizen of Florida.  *Id*. at 2, ¶ 3.  Her estate also lies in Florida.[2]

After filing their notice of removal, Defendants filed a motion to compel arbitration on August 9, 2005, asking the Court to compel arbitration, dismiss the lawsuit, strike discovery, or in the alternative, grant summary judgment.  Docket No. 3.  The undersigned denied the motion without prejudice for failure to comply with Local Rule 3.01(g) (certificate of conference).  Docket No. 6. On August 16, 2005, Defendants filed a motion to compel arbitration (Docket No. 7) and a motion for summary judgment (Docket No. 8), this time as separate motions. The undersigned again denied the motion to compel arbitration (Docket No. 7) without prejudice for Defendants' failure to comply with Local Rule 3.01(g).  Docket No. 9.

On September 30, 2005, Defendants filed an amended motion for summary judgment (Docket No. 25) and an amended motion to dismiss or strike the amended complaint (Docket No. 24).  Neither

---

[2] At the evidentiary hearing on the motion to compel arbitration on December 16, 2006, Plaintiff's counsel stated that Harkey's estate was "a Florida estate" that was "created for this litigation."

motion, currently pending before the Honorable Anne C. Conway, has been referred to the undersigned. The same day, Defendants filed the motion to compel arbitration now before the Court seeking an order compelling arbitration, dismissing of the case, and striking discovery. Docket No. 23. Defendants contend that Snider, on behalf of Harkey, signed a valid and "voluntary" agreement for arbitration. *Id.* at 2. On October 11, 2005, Plaintiff Snider filed a response to the motion requesting an evidentiary hearing, and alleging, *inter alia*, that the arbitration agreement was not valid because the circumstances surrounding the execution of the arbitration agreement were procedurally unconscionable, and because Plaintiff did not knowingly and voluntarily waive her rights to a jury trial. Docket No. 30-1.

Judge Conway referred the motion to the undersigned on October 14, 2005. Docket No. 31. On December 12, 2005, the undersigned held an evidentiary hearing on the motion to compel arbitration, pursuant to *Miller v. Drexel Burnham Lambert, Inc.*, 791 F.2d 850, 854 (11th Cir. 1986). *See* Docket Nos. 38, 39. At the hearing, Plaintiff's counsel presented the testimony of Snider, and Cox testified on behalf of Defendants.

**B.     Analysis of the Arbitration Agreement**

The FAA governs the interpretation, enforcement, and proceedings pursuant to the Arbitration Agreement.[3] As stated earlier, the Court should consider three issues in ruling on a motion to compel

---

[3] At the evidentiary hearing, Plaintiff's counsel argued, for the first time, that because this contract was for "medical care in the State of Florida," this contract did not involve interstate commerce. Given the Supreme Court's expansive reading of the phrase "evidencing a transaction involving commerce," the contract for nursing home services in this case clearly evidences a transaction in interstate commerce. *See, e.g., Perry*, 482 U.S. at 290. The Facility is affiliated with foreign corporations who own and operate nursing homes in multiple states, including the Facility in Florida. Docket No. 23-3 at 2. Further, the Arbitration Agreement states that both the "resident" signing the arbitration agreement and the Facility "understand that the Admission Agreement involves interstate commerce," and that "the parties expressly agree that this [Arbitration] Agreement will be governed by the [FAA]." *Id.*

arbitration of a given dispute: 1.) whether a valid written agreement to arbitrate exists; 2.) whether an arbitrable issue exists; and 3.) whether the right to arbitration was waived. Plaintiff's principal arguments in opposing arbitration is that a valid written agreement to arbitrate does not exist 1.) because the circumstances surrounding the execution of the Arbitration Agreement were unconscionable, and 2.) because any agreement Snider entered into is only enforceable against Mariner Health of Conway Lakes or Mariner Health Care, not the Defendants (who, according to Plaintiff, gained a license to the Facility after the Arbitration Agreement was signed).[4] At the hearing, both parties agreed that the Court, not the arbitrator, must decide this issue.

After considering the testimony presented, the relevant case law, and the record, the Court finds that a valid agreement to arbitrate exists. Snider signed the Arbitration Agreement as Harkey's legal representative pursuant to authority granted under a valid power of attorney. *See* Docket No. 23-3.[5] The Arbitration Agreement itself is very clear. It states that "the following is an agreement to arbitrate any dispute that might arise between . . . [the] Resident" and the Facility. *Id.* at 2. The

---

[4]Neither party contests that an arbitrable issue exists. An action under the Florida nursing home statute is clearly an arbitrable issue under the Arbitration Agreement. *See* Docket No. 23-3 at 3. In Plaintiff's memorandum opposing arbitration, Plaintiff briefly argues that Defendants waived their right to arbitration by seeking attorney's fees in their motion for summary judgment. Docket No. 30-1 at 4. Plaintiff did not pursue this argument during the hearing. Defendants filed a motion to compel arbitration five days after removal of this action to this Court. Docket No. 3. Two of Defendants' motions to compel arbitration were denied for failure to comply with Local Rule 3.01(g). The motion currently before the Court asks for similar relief, but complies with Local Rule 3.01(g). Plaintiff has not demonstrated (nor cited any authority to support the argument) that by requesting attorney's fees in a summary judgment motion, Defendants have invoked the judicial process to the detriment or prejudice of Plaintiff such that they have waived their right to arbitration. The Court finds that Defendants have not waived their right to arbitration.

[5]Snider signed on behalf of Harkey pursuant to a "durable limited power of attorney" (dated April 2003) in which Harkey appointed Snider to act on her behalf in consenting to Harkey's placement in a "hospital, nursing home, or other health care facility." Docket No. 23-5 at 1, 3. Snider argues in her memorandum that the Arbitration Agreement is not enforceable against her (as personal representative for the estate of Harkey) because at the time she signed the Arbitration Agreement, Snider did not sign as Harkey's personal representative. Docket No. 30-1 at 9. This argument is not consistent with the POA filed at Docket No. 23-5. At the hearing, Snider testified that the POA was in effect at the time Snider signed the Arbitration Agreement.

Arbitration Agreement further states that the "parties expressly agree and voluntarily enter into this binding Arbitration Agreement." *Id.*

The Court finds no procedural unconscionability. The Arbitration Agreement does not contain any terms hidden in fine print. In fact, directly above the signature line where Snider signed on behalf of Harkey, the agreement states in large block letters:

> **THE UNDERSIGNED ACKNOWLEDGE THAT EACH OF THEM HAS READ THIS ENTIRE AGREEMENT AND UNDERSTANDS THAT BY SIGNING THIS AGREEMENT EACH HAS WAIVED HIS/HER RIGHT TO A TRIAL, BEFORE A JUDGE OR JURY, AND THAT EACH OF THEM VOLUNTARILY CONSENTS TO ALL OF THE TERMS OF THE AGREEMENT.**

Docket No. 23-3 at 4.

The Court also finds Cox's testimony to be credible. Cox testified that she was trained on how to present and explain the Arbitration Agreement, and that she always tried to make the residents (or their representatives) "comfortable" with what they were signing. The Arbitration Agreement was not offered on a "take it or leave it basis." Cox testified that Harkey's admission to the nursing home was not premised on whether Snider signed the Arbitration Agreement. Snider also testified that Cox never told her that Harkey would not be admitted if she did not sign the arbitration agreement. Further, even if Snider did not read the Arbitration Agreement at the time she signed it, Snider was allowed to rescind the agreement within thirty days of signature. *Id.* At the hearing, Plaintiff's counsel argued (without citing any legal authority) that the Arbitration Agreement is unconscionable as Snider did not have any choice but to sign the agreement because she could not find another facility for Harkey on short notice. The Court rejects this argument. The law does not void a contract as unconscionable whenever a contracting party has limited choices.

The Court similarly finds no substantive unconscionability. The terms of the Arbitration Agreement are neither unreasonable nor unfair. Both the Facility and Snider are bound by the agreement. *See id.* At the hearing, Plaintiff's counsel argued that the Admission Agreement deprived Snider of the right to a jury trial and imposed limits on attorney's fees such that the agreement was substantively unconscionable as a matter of law. This argument proves too much, and is not supported by legal authority. Under this argument, every arbitration agreement would be substantively unconscionable.

Finally, at the hearing, Plaintiff's counsel argued that the Arbitration Agreement is not enforceable because Mariner Health of Conway Lakes and Mariner Health Care, not the Defendants, entered into this agreement. On July 15, 2003, the Facility was named Mariner Health of Conway Lakes ("Mariner Facility") and was owned and managed by companies affiliated with Mariner Health Care ("Mariner"). *See* Docket No. 30-3 at 2, ¶ I. Mariner and the Mariner Facility are listed as parties in the Admission Agreement (*id.*), and only Mariner is mentioned in the Arbitration Agreement (Docket No. 23-3 at 2). Plaintiff's counsel, during the hearing, argued that because Defendants Conway Lakes and SBK were not parties to the Arbitration Agreement, Defendants cannot enforce the agreement against Snider. Plaintiff is wrong.

The Arbitration Agreement provides that the agreement to arbitrate applies to any dispute that might arise between the Mariner Facility, including its "parents, affiliates, and subsidiary companies . . . successors, assigns, agents, attorney and insurers." Docket No. 23-3 at 2. The agreement further states that "[i]t is the intention of the Facility and the Resident that this Agreement shall insure to the benefit of and bind the Facility, its parents, affiliates, and subsidiary companies . . . successors, assigns, agents, attorneys, and insurers." *Id.* at 3. Conway Lakes and SBK purchased the Facility in December

2003. Defendants therefore are the "successors" in interest to Mariner. Plaintiff's counsel argued that Defendants were not successors in interest because they merely obtained a license from Mariner to operate the Facility, but offered no evidence in support. Until the hearing, Plaintiff never raised the question of whether Defendants were successors in interest to Mariner. In fact, the complaint pleads that "at all times material hereto, the Defendants, Conway Lakes NC, LLC d/b/a Conway Lakes Nursing Center, and SBK Capital, LLC, owned, operated, managed and maintained [the Facility]." Docket No. 2 at 1, ¶ 2. The Court finds that Defendants Conway Lakes and SBK are the successors in interest to Mariner within the meaning of the Arbitration Agreement, and that both Defendants and Snider are bound by the valid written agreement to arbitrate.

It is therefore **RECOMMENDED** that Defendants' motion to compel arbitration (Docket No. 23) be **GRANTED** in part and **DENIED** in part. Plaintiff and Defendants should be ordered to arbitrate all claims in this action in accordance with the Arbitration Agreement. Defendants' request for dismissal should be denied, and the case should be stayed and administratively closed pending arbitration. Defendants' request to strike discovery should be denied as moot, as the parties have not yet produced discovery in this case. *See* Docket No. 41.

Failure to file written objections to the proposed findings and recommendations contained in this report within ten (10) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on January 31, 2006.

JAMES G. GLAZEBROOK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

The Honorable Anne C. Conway
Counsel of Record
Unrepresented Party
Courtroom Deputy